| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Darren J. Devlin, Esq. [SBN 176261]**<br>**The Law Offices of Jason C. Tatman, A.P.C.**<br>**5677 Oberlin Drive, Suite 210**<br>**San Diego, CA 92121**<br>**(844) 252-6972**<br>**Fax (858) 348-4976**<br>**jt@nationwidereconveyance.com**<br><br><br><br>☐ *Movant appearing without an attorney*<br>☑ *Attorney for Movant* | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>**Carlos Franco Guzman**<br>**Guadalupe Paramo, non-filing Co-Debtor,** | CASE NO.: **2:19-bk-12122-WB**<br>CHAPTER: **7** |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| Debtor(s). | DATE: 05/21/2019<br>TIME: 10:00 a.m.<br>COURTROOM: **1375** |

| **Movant:** | **U.S Bank National Association as Trustee for the Certificateholders of Citigroup Mortgage Loan Trust Inc  Asset-Backed Pass-Through Certificates, Series 2007-AMC1** |
|---|---|

1. **Hearing Location:**

   ☑ 255 East Temple Street, Los Angeles, CA 90012        ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

NtcMfr_CAC_X02                                                                                                    4128-N-3790

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☑  This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐  This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

    a.  ☐  An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b.  ☐  An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (*if any*).

    c.  ☐  An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  04/24/2019

**The Law Offices of Jason C. Tatman, A.P.C.**
Printed name of law firm (*if applicable*)

**Daren J. Devlin, Esq.**
Printed name of individual Movant or attorney for Movant

*/s/Darren J. Devlin*
Signature of individual Movant or attorney for Movant

NtcMfr_CAC_X02                                                                                          4128-N-3790
This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 2                         **F 4001-1.RFS.RP.MOTION**

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☑ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☑ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary. **SEE CONTINUATION PAGE FOR STATEMENT.**

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   | | |
   |---|---|
   | *Street address*: | **15029 Roseton Avenue** |
   | *Unit/suite number*: | |
   | *City, state, zip code*: | **Norwalk, California 90650** |

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit **2**): **06 2171938 in Los Angeles County, California**

3. **Bankruptcy Case History:**

   a. A ☑ voluntary ☐ involuntary bankruptcy petition under chapter ☐ 7 ☐ 11 ☐ 12 ☑ 13 was filed on (*date*): **2/27/2019**.

   b. ☑ An order to convert case to chapter ☑ 7 ☐ 11 ☐ 12 ☐ 13 was entered on (*date*) **3/27/2019**.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☑ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☑ Movant's interest in the Property is not adequately protected.

       (A) ☑ Movant's interest in the Property is not protected by an adequate equity cushion.

       (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

       (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☑ The bankruptcy case was filed in bad faith.

       (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

       (B) ☑ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

       (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

       (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

       (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

       (F) ☐ Other (*see attached continuation page*)

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: | (Short Title) | Chapter: 7 |
|---|---|---|
| | Carlos Franco Guzman | Case No.    2:19-bk-12122-WB |
| | Debtor(s). | |

## CONTINUATION PAGE

## (MOVANT: U.S Bank National Association as Trustee for the Certificateholders of Citigroup Mortgage Loan Trust Inc  Asset-Backed Pass-Through Certificates, Series 2007-AMC1)

ATTACHMENT 1.

1.  STANDING STATEMENT:

Specialized Loan Servicing, LLC services the loan on the Property referenced in this Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant or Movant's successor or assignee. Movant, directly or through an agent, has possession of the Note. The Note is either made payable to Movant or has been duly endorsed. Movant is the original mortgagee or beneficiary or the assignee of the Mortgage/Deed of Trust.

(3) ☐  (*Chapter 12 or 13 cases only*)

(A) ☐  All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

(B) ☐  Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐  The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐  The Movant regained possession of the Property on (*date*) _____,
which is ☐ prepetition ☐ postpetition.

(6) ☐  For other cause for relief from stay, see attached continuation page.

b. ☑  Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐  Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐  Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

(1) ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

(2) ☐  Multiple bankruptcy cases affecting the Property.

5. ☐  **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐  These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐  Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit ___.

c. ☐  Other (*specify*):

6. **Evidence in Support of Motion: (*Declaration(s) MUST be signed under penalty of perjury and attached to this motion*)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐  Supplemental declaration(s).

c. ☑  The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit **4**.

d. ☑  Other: **The Loan Modification Agreement attached as Exhibit 5.**

7. ☐  **An optional Memorandum of Points and Authorities is attached to this motion.**

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☑ 11 U.S.C. § 362(d)(1) ☑ 11 U.S.C. § 362(d)(2) ✳ 11 U.S.C. § 362(d)(3).

2. ☑ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☑ Movant, or its agents, may, at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☑ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☑ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐X Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ✳ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or ✳ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ✳ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☐ without further notice, or ✳ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☑ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☐ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date: _04/24/2019_

**The Law Offices of Jason C. Tatman, A.P.C.**
Printed name of law firm (*if applicable*)

**Darren J. Devlin, Esq.**
Printed name of individual Movant or attorney for Movant

*/s/Darren J. Devlin*
Signature of individual Movant or attorney for Movant

MtnMfr_CAC_R02                                                                4128-N-3790

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                          Page 5                          **F 4001-1.RFS.RP.MOTION**

## REAL PROPERTY DECLARATION

I, (print name of Declarant) ___Ami McKernan_____, declare:

1.  I have personal knowledge of the matters set form in this declaration and, if called upon to testify, I could and would
    competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real
    property that is the subject of this Motion (Property) because (specify):

    a.  ☐ I am the Movant.

    b.  ☐ I am employed by Movant as (state title and capacity):

    c.  ☒ Other (specify): I am a(n) ____Second Assistant Vice President_____ employed by Specialized Loan
        Servicing, LLC ("SLS"), and am authorized to sign this Declaration on behalf of SLS, as servicer for
        Movant: U.S Bank National Association as Trustee for the Certificateholders of Citigroup Mortgage
        Loan Trust Inc  Asset-Backed Pass-Through Certificates, Series 2007-AMC1.

2.  a.  ☐ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of
        credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and
        as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them
        from the business records of Movant on behalf of Movant. These books, records and files were made at or
        about the time of the events recorded, and which are maintained in the ordinary course of Movant's business
        at or near the time of the actions, conditions or events to which they relate. Any such document was prepared
        in the ordinary course of business of Movant by a person who had personal knowledge of the event being
        recorded and had or has a business duty to record accurately such event. The business records are available
        for inspection and copies can be submitted to the court if required.

    b.  ☒ Other (see attached):

3.  The Movant is:

    a.  ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the
        promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct
        copy of the note, with affixed allonges/indorsements, is attached as Exhibit 1.

    b.  ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,
        mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded
        security instrument and assignments are attached as Exhibit 2&3

    c.  ☐ Servicing agent authorized to act on behalf of the:
        ☐ Holder.
        ☐ Beneficiary.

    d.  ☐ Other (specify):

4.  a.  The address of the Property is:

        Street address:        15029 Roseton Avenue
        Unit/suite no.:
        City, state, zip code:  Norwalk, California 90650

    b.  The legal description of the Property or document recording number (including county of recording) set forth in the
        Movant's deed of trust is: 06 2171938 in Los Angeles County, California

DocM8_CAC_R02                                                                                    4128-N-3790

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 6                        F 4001-1.RFS.RP.MOTION

5. Type of property (*check all applicable boxes*):

   a. ☑ Debtor's principal residence       b. ☐ Other residence

   c. ☐ Multi-unit residential             d. ☐ Commercial

   e. ☐ Industrial                         f. ☐ Vacant land

   g. ☐ Other (*specify*):

6. The nature of Debtor's interest in the Property:

   a. ☑ Sole owner **Guadalupe Paramo**

   b. ☐ Co-owner(s) (*specify*):

   c. ☐ Lienholder (*specify*):

   d. ☐ Other (*specify*):

   e. ☑ Debtor ☐ did ☑ did not list the Property in the Debtor's schedules.

   f. ☑ The Debtor acquired the interest in the Property by ☑ grant deed ☐ quitclaim deed ☐ trust deed.
      The deed was recorded on (*date*) <u>2/17/2019</u>.

7. Movant holds a ☑ deed of trust ☐ judgment lien ☐ other (*specify*) _____
   that encumbers the Property.

   a. ☑ A true and correct copy of the document as recorded is attached as Exhibit <u>2</u>.

   b. ☑ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
      attached as Exhibit <u>1</u>.The Loan Modification Agreement attached as Exhibit <u>5</u>.

   c. ☑ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
      trust to Movant is attached as Exhibit <u>3</u>.

8. Amount of Movant's claim with respect to the Property:

|   |   | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal (including any deferred): | | | $ 394,953.95 |
| b. | Accrued interest: | | | $ 170,207.24 |
| c. | Late charges: | | | $ 0.00 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | | | $ 9,615.46 |
| e. | Advances (property taxes, insurance): | | | $ 46,778.64 |
| f. | Less suspense account or partial balance paid: | | | $ 0.00 |
| g. | TOTAL CLAIM as of (*date*): 4/16/2019 | | | $ 621,555.29 |
| h. | ☐ Loan is all due and payable because it matured on (*date*) | | | |

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
   has occurred*).

   a. Notice of default recorded on (*date*) <u>9/22/2017</u> or ☐ none recorded.

   b. Notice of sale recorded on (*date*) <u>6/11/2018</u> or ☐ none recorded.

   c. Foreclosure sale originally scheduled for (*date*) <u>7/19/2018</u> or ☐ none scheduled.

   d. Foreclosure sale currently scheduled for (*date*) _____ or ☑ none scheduled.

   e. Foreclosure sale already held on (*date*) _____ or ☑ none held.

   f. Trustee's deed upon sale already recorded on (*date*) _____ or ☑ none recorded.

DecMil_CAC_R02                                                                      4126-N-3790
This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                              Page 7                      F 4001-1.RFS.RP.MOTION

| | |
|---|---|
| In re:              (Short Title)<br><br>Carlos Franco Guzman<br><br>                    Debtor(s). | Chapter: 7<br><br>Case No.    2:19-bk-12122-WB |

## CONTINUATION PAGE

### (MOVANT: U.S Bank National Association as Trustee for the Certificateholders of Citigroup Mortgage Loan Trust Inc  Asset-Backed Pass-Through Certificates, Series 2007-AMC1)

### (Attachment 2.b. Page 6)

2. b. Other (see attached): In my capacity as an employee of Specialized Loan Servicing LLC, servicer for Movant, I am authorized to execute this declaration on behalf of Movant. I have personal knowledge of, and am familiar with the books, records and files of Specialized Loan Servicing LLC, as servicer for Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally reviewed and worked on the books, records and files of Specialized Loan Servicing LLC, as servicer for Movant, and as to the following facts, I have gained knowledge of them from the business records of Specialized Loan Servicing LLC kept and maintained on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and are maintained in the ordinary course of Specialized Loan Servicing LLC's business at or near the time of the actions, conditions or events to which they relate. Any such document or record was prepared in the ordinary court of business of Specialized Loan Servicing LLC by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☑ (*Chapter 7 and 11 cases only*) Status of Movant's loan:

   a.   Amount of current monthly payment as of the date of this declaration: $_____ for the month of
       _____.

   b.   Number of payments that have become due and were not made: **111**. Total amount: **$216,012.18**

   c.   Future payments due by time of anticipated hearing date (*if applicable*): **1**.

        An additional payment of **$2,400.83** will come due on (*date*) **5/1/2019** and on the **1st** day of each month thereafter. If the payment is not received within **NA** days of said due date, a late charge of **N/A** will be charged to the loan.

   d.   The fair market value of the Property is **$350,000.00**, established by:

       (1) ☐   An appraiser's declaration with appraisal is attached as Exhibit ____.

       (2) ☑   A real estate broker or other expert's declaration regarding value is attached as **Exhibit 4.**

       (3) ☐   A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit ____.

       (4) ☐   Other (*specify*):

   e.   **Calculation of equity/equity cushion in property:**
        Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

|  | Name of Holder | Amount as Scheduled by Debtor (if any) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Movant | $ | $      621,555.29 |
| 2nd deed of trust: |  | $ | $ |
| 3rd deed of trust: |  | $ | $ |
| Judgment liens: |  | $ | $ |
| Taxes: |  | $ | $ |
| Other: |  | $ | $ |
| **TOTAL DEBT: $ 621,555.29** |  |  |  |

   f.   Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit **2&4** and consist of:

       (1) ☐   Preliminary title report.

       (2) ☐   Relevant portions of the Debtor's schedules.

       (3) ☑   Other (specify): **Deed of Trust; Grant Deed**

   g.   ☑  **11 U.S.C. § 362(d)(1) – Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is **(-271,555.29)** and is **0**% of the fair market value of the Property.

   h.   ☑  **11 U.S.C. § 362(d)(2)(A) – Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is **(-$299,555.29)**.

DocMb_CAC_R02

4128-N-3790

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                  Page 8                **F 4001-1.RFS.RP.MOTION**

i.  ☑  Estimated costs of sale: **$28,000.00** (estimated based upon **8**% of estimated gross sales price)

j.  ☐  The fair market value of the Property is declining because:

12. ☐  (Chapter 12 and 13 cases only) Status of Movant's loan and other bankruptcy case information:

a.  A 341(a) meeting of creditors is currently scheduled for (or concluded on) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date: _____.
A plan was confirmed on the following date (if applicable): _____.

b.  Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit ___.)

c.  Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |

d.  Postpetition advances or other charges due but unpaid:                     $_____
(For details of type and amount, see Exhibit ___)

e.  Attorneys' fees and costs:                     $_____
(For details of type and amount, see Exhibit ___)

f.  Less suspense account of partial paid balance:                     $_____ 0.00

TOTAL POSTPETITION DELINQUENCY:     $_____

g.  Future payments due by time of anticipated hearing date (if applicable): _____
An additional payment of $_____ will come due on (date) _____ and on the ___ day of each
month thereafter. If the payment is not received by the N/A day of the month, a late charge of $ N/A will be
charged to the loan.

h.  Amount and date of the last 3 post petition payments received from the Debtor in good funds, regardless of how
applied (if applicable):

$_____     received on (date)     _____
$_____     received on (date)     _____
$_____     received on (date)     _____

i.  ☐  The entire claim is provided for in the Chapter 12 or 13 plan and postpetition plan payments are delinquent. A
plan payment history is attached as Exhibit ___. See attached declaration(s) of chapter 12 trustee or 13
trustee regarding receipt of payments under the plan (attach LBR form F4001-1.DEC.AGENT.TRUSTEE).

DecMfr_CAC_R02                                                                                     4128-N-3790

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                          Page 9                          F 4001-1.RFS.RP.MOTION

13. ☐   Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐   The court determined on (date) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐   The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit ____.

16. ☐   Movant regained possession of the Property on (date) _____, which is ☐ prepetition ☐ postpetition.

17. ☑   The bankruptcy case was filed in bad faith:

   a.   ☐   Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b.   ☐   Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c.   ☐   The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d.   ☐   Other (specify):

18. ☑   The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a.   ✸   The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b.   ☐   Multiple bankruptcy cases affecting the Property include:

      1.   Case name: _____
           Chapter: _____   Case number: _____
           Date dismissed: _____          Date discharged: _____   Date filed:
           _____
           Relief from stay regarding the Property ☐ was ☐ was not granted.

      2.   Case name: _____
           Chapter: _____   Case number: _____
           Date dismissed: _____          Date discharged: _____   Date filed:
           _____
           Relief from stay regarding the Property ☐ was ☐ was not granted.

      3.   Case name: _____
           Chapter: _____   Case number: _____
           Date dismissed: _____          Date discharged: _____   Date filed:
           _____
           Relief from stay regarding the Property ☐ was ☐ was not granted.

   ☐   See attached continuation page for information about other bankruptcy cases affecting the Property.

   ☐   See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

DecMfi_CAC_R02                                                                                                        4128-N-3790

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                            Page 10                              F 4001-1.RFS.RP.MOTION

19. ☐   Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

    a.  ☐   These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

    b.  ☐   Although Movant knew the bankruptcy case was filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit ___.

    c.  ☐   For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____ **APR 2 3 2019** _____ Ami McKernan _____    _____

Date                      Printed Name                              Signature

DecMtr_CAC_R02                                                                                                          4128-N-3790

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                                       Page 11                            **F 4001-1.RFS.RP.MOTION**

# REDUCED PAYMENT ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

September 21, 2006
Date

Orange
City

CA
State

15029 ROSETON AVENUE, NORWALK, CA 90650
Property Address

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 375,000.00  (this amount is called "principal"), plus interest, to the order of the Lender.  The Lender is   Argent Mortgage Company, LLC.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid.  I will pay interest at a yearly rate of  7.150 %.  This interest rate I will pay may change in accordance with Section 4 of this Note.  The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on   November 1, 2006 .

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  My monthly payments will be applied to interest before principal. If, on, October 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at:    505 City Parkway West, Suite 100,  Orange, CA 92868
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $2,371.34 based upon a fully amortizing 40 year repayment schedule in effect for the first ten years of the term of this Note.  This amount may change as described in Sections 3 (C) and 4 of this Note.

### (C) Re-Amortization/Change in Payment

On November 1, 2016  the outstanding principal balance will be re-amortized so that the entire principal balance will be repaid on the Maturity Date.  This will result in an increase in my monthly payment.  This new monthly payment amount may change due to adjustments for interest changes as set forth in Section 4 of this Note.  The Note Holder will notify me prior to the date of any change in monthly payment.

### (D) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of,  October, 2009  and on that day every  six  month thereafter.  Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal.  The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding  six percentage point(s) (6.000%) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percent (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.  The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal balance that I am expected to owe at the Change Date at my new interest rate in substantially equal payments in accordance with the amortization provisions set forth in Sections 3(B) and 3(C) of this Note.  The result of this calculation will be the new amount of my monthly payment.

Initials:

221-1UN6V RED (Rev. 11/05)

09/21/2006 10:17:43 AM

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.150 %** or less than **7.150%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One percentage point(s) 1.000%** from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **13.150 %** or less than **7.150 %**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  PREPAYMENT PRIVILEGE**

I may repay all or any part of the principal balance of this Note in accordance with the terms of this Section. A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

**(A) Prepayment Made Three (3.00) year(s) After the Date of this Note**

I will not have to pay a prepayment charge if I make a prepayment on the Three (3.00) year anniversary of the date this Note is executed, or at any time thereafter.

**(B) Prepayment Made Within Three (3.00) year(s) of the Date of this Note**

I will pay Lender a prepayment charge if, in any twelve (12) month period before the Three (3.00) year anniversary of the date this Note is executed, I prepay more than 20% of the original principal balance of this Note. The prepayment charge will be six (6) months interest, at the rate then in effect on this Note, on the amount in excess of 20% of the original principal balance that I prepay within such 12 month period.

**(C) Application of Funds**

I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives first to pay any prepayment charge and next in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(D) Monthly Payments**

If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and Security Instrument, my regularly scheduled payments of principal and interest will not change as a result.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payment**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder.

The amount of the charge will be **6.000  %** of my overdue payment of principal and interest.

I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full  as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

09/21/2006 10:17:43 AM

## 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any Interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

PAY TO THE ORDER OF

WITHOUT RECOURSE
ARGENT MORTGAGE COMPANY, LLC

_____ (Seal)
Borrower   GUADALUPE PARAMO

BY: _____ (Seal)
SAM MARZOUK, PRESIDENT

BY: _____
GREGORY E HANSON, C.F.O.

_____ (Seal)
Borrower

_____ (Seal)
Borrower

▲ This page is part of your document - DO NOT DISCARD ▲

**06 2171938**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**09/29/06 AT 08:00am**

## TITLE(S) :

▲  ▲

L E A D    S H E E T

FEE
FEE $61. RR
DAF $2
C-20        9

CODE
20

CODE
19

CODE
9____

D.T.T.

NOTIFICATION SENT-$4

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.    Number of AIN's Shown

▲ THIS FORM IS NOT TO BE DUPLICATED ▲

2

Recording Requested By:
Argent Mortgage Company, LLC

Return To:

Argent Mortgage Company, LLC
C/O Nationwide Title Clearing,
2100 Alt 19 North
Palm Harbor, FL 34683

**06 2171938**

Prepared By: Argent Mortgage Company,
Michael Kang
One City Boulevard West
Orange, CA 92868

————————————————————— [Space Above This Line For Recording Data] —————————————————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **September 21, 2006**
together with all Riders to this document.
(B) "Borrower" is **GUADALUPE PARAMO, A Single Woman**

Borrower is the trustor under this Security Instrument.
(C) "Lender" is **Argent Mortgage Company, LLC**

Lender is a **Limited Liability Company**
organized and existing under the laws of **Delaware**

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005  1/01

[VMP] -6(CA) (0005)

Page 1 of 15                    Initials _G.P_

VMP MORTGAGE FORMS - (800)521-7291

09/21/2006 10:17:43 AM

d06-01ca (05/2005)Rev.01

3

Lender's address is **3 Park Plaza - 10th Floor  Irvine, CA 92614**

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is **Town and Country Title Services, Inc.**

(E) "Note" means the promissory note signed by Borrower and dated **September 21, 2006**
The Note states that Borrower owes Lender **three hundred seventy-five thousand and
00/100**                                                                        Dollars
(U.S. $**375,000.00**           ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **October 1, 2036**
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

(•••)-6(CA) (0006)                    Page 2 of 15  09/21/2006 10:17:43  Form 3005  1/01

**06 2171938**

D06-02CA (05/2005)Rev 01

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|                County                |        of        |        LOS ANGELES        |  :  |
| [Type of Recording Jurisdiction]     |                  | [Name of Recording Jurisdiction] |     |

**EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF:**

Parcel ID Number: ███████████                            which currently has the address of
**15029 ROSETON AVENUE**                                                          [Street]
**NORWALK**                                       [City], California 90650          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

-6(CA) (0008)                         Page 3 of 15          09/21/2006 10:17:43  Form 3005  1/01

(05/2005)Rev.01                                          **06 2171938**

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

 -6(CA) (0005)    Page 4 of 15    09/21/2006 10:17:43    Form 3005  1/01

D06-04CA (05/2005)Rev.01

**06 2171938**

09/29/06

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with



the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



-6(CA) (0005)    Page 7 of 15    09/21/2006 10:17:43    Form 3005    1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

D06-08CA (05/2005)Rev.01

06 2171938

09/26/06

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender



-6(CA) (0005)          Page 9 of 15    09/21/2006 10:17:43    Form 3005   1/01

D06-09CA (05/2005)Rev.01                    06 2171938

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

12

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

D06-11CA (05/2005)Rev.01                    **06 2171938**

*13*

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6(CA) (0005)

Initials ____

Page 12 of 15    09/21/2006 10:17:43    Form 3005    1/01

**06 2171938**

14

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.


09/29/06

*15*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                        GUADALUPE PARAMO            -Borrower

_____    _____ (Seal)
                                                                    -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                                 -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                                 -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                                 -Borrower



09/29/06

16

State of California

County of Los Angeles } ss:   JOE ALEMAN   Notary Public

On 9|21|06   before me,   JOE ALEMAN
Day/Month/Year                Notary Public

personally appeared

GUADALUPE PARAMO.

personally known to me (or proven to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s)
acted, executed the instrument

Witness my hand and official seal.

Notary Public                              (Seal)

JOE ALEMAN
Commission # 1489815
Notary Public - California
Los Angeles County
My Comm. Expires May 16, 2008

Page 15 of 15

09/21/2006 10:17:43 AM

06 2171938

400-15CA (05/2005)Rev.01

*17*

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 21st day of September , 2006   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Argent Mortgage Company, LLC (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

15029 ROSETON AVENUE, NORWALK, CA  90650
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of  **7.150** %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the first day of **October, 2009**  , and on that day every six month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials *6.P*

Loan Number: ███████████

09/21/2006 10:17:43 AM

**06  2171938**

09/29/06

*18*

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **six** percentage points ( **6.000 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date at my new interest rate in substantially equal payments in accordance with the amortization set forth in Sections 3(B) amd 3(C) of the Note. The result of this calculation will be the new amount of monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **9.150% or less than 7.150%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One( 1.000 %)** from the rate of interest I have been paying for the preceding   six months. My interest rate will never be greater than 13.150)% or less than 7.150)%.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initals ____

Loan Number: ████████

09/21/2006 10:17:43 AM

**06  2171938**

19

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
Borrower GUADALUPE PARAMO              Borrower


_____ (Seal)        _____ (Seal)
Borrower                              Borrower



Loan Number: █████████

09/21/2006 10:17:43 AM

06 2171938

LOT(S) 188 OF TRACT NO. 6669, IN THE CITY OF NORWALK, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 113, PAGE(S) 45 AND 46 OF MAPS, IN THE OFFICE OF THE
COUNTY RECORDER OF SAID COUNTY.

Form PR-5                              Page 3

06  2171938



This page is part of your document - DO NOT DISCARD



## 20101349340

Pages:
0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

09/23/10 AT 08:00AM

| FEES: | 36.00 |
|---|---|
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 36.00 |

**LEADSHEET**

SEQ:
03

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED

LANDSAFE TITLE

RECORDING REQUESTED BY:
RECONTRUST COMPANY
AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:

RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

09/23/2010

*20101349340*

ATTN: Joliebeth Cope
TS No.

TSG#

## SUBSTITUTION OF TRUSTEE AND ASSIGNMENT OF DEED OF TRUST

The undersigned ARGENT MORTGAGE COMPANY, LLC, (hereinafter referred to as Beneficiary) is the Beneficiary of that certain Deed of Trust dated 09/21/2006, executed by GUADALUPE PARAMO, A SINGLE WOMAN, Trustor, to TOWN AND COUNTRY TITLE SERVICES, INC., as Trustee, and recorded as Instrument No. 06 2171938 on 09/29/2006, of Official Records in the County Recorder's Office of LOS ANGELES County, California. NOW THEREFORE, Beneficiary hereby substitutes RECONTRUST COMPANY, N.A., WHOSE ADDRESS IS 1800 Tapo Canyon Rd., CA6-914-01-94, SIMI VALLEY, CA 93063, as Trustee under said Deed of Trust herein referred to, in the place and stead of and with all rights, title, powers, and interest of the former trustee described above.

FOR VALUE RECEIVED, the undersigned hereby grants, assigns, conveys and transfers to U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CITIGROUP MORTGAGE LOAN TRUST INC ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2007-AMC1 all beneficial interest under that certain Deed of Trust described above. Said described land: "As more fully described in the above referenced Deed of Trust" Together with the note or notes therein described or referred to, the money due and to become due thereon with the interest, and all rights accrued or to accrue under said Deed of Trust

DATED: September 16, 2010                ARGENT MORTGAGE COMPANY, LLC

State of: ___CALIFORNIA___    ) BY: _____
County of: ___VENTURA___     )   GULSHAN OOMERJEE   ASSISTANT SECRETARY

On ___SEP 2 0 2010___ before me, ___M I Miller___, notary public, personally appeared
___GULSHAN OOMERJEE___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal

Signature _____ (Seal)
Notary Public's Signature


M. I. MILLER
COMM #1836833
Notary Public California
Los Angeles County
My Comm. Expires Feb 15, 2013

Form subasgnment (01/09)

**CERTIFIED COPY**

RECORDING REQUESTED BY:
BAC Home Loans Servicing, LP
Attn: Home Retention Division
100 Beecham Drive Suite 104
Pittsburgh, PA 15205

Doc ID # ███████ MOD

------------------SPACE ABOVE THIS LINE FOR RECORDER'S USE------------------

## LOAN MODIFICATION AGREEMENT
### (Step Rate)

This Loan Modification Agreement ("Agreement"), made this 30th day of September, 2009, between GUADALUPE PARAMO (the "Borrower(s)") and BAC Home Loan Servicing, LP (the "Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 26th day of September, 2006 (2) the Note and Adjustable Rate Rider and secured by, the Security Instrument, and (3) any prior agreements or modifications in effect relative to the Note and Security Instrument which covers the real property described in the Security Instrument and defined therein as the 'Property', located at 15029 ROSETON AVENUE, NORWALK, CA 90650, collectively the prior documents shall be referred to herein as the "Note and Security Instrument".

The real property described being set forth as follows:

### SAME AS IN SAID SECURITY INSTRUMENT

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1.  **Amount of Borrower's Unpaid Principal Balance**

    As of the 1st day of November, 2009, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $394,953.95, consisting of the amount(s) owed by the Borrower to the Lender and which may include, but are not limited to, any past due principal payments, interest, escrow payments, fees and/or costs ("Unpaid Amounts") which you have agreed shall be capitalized (added to the amount you originally borrowed) as one of the terms of this agreement. Any late/delinquency fees associated with overdue loan payments remaining unpaid as of the date immediately before this modification have been be waived and not included in this capitalization. The Borrower understands that capitalizing the Unpaid Amounts may result in the Borrower paying more interest over the life of the loan.

2.  **Borrower's Promise to Pay**

    The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. If on the 1st day of October, 2036 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

    The Borrower will make such payments at Payment Processing P.O. Box 10219 Van Nuys, CA 91410 or at such other place as the Lender may require.

3.  **Amount of Borrower's Initial Scheduled Monthly Payments**

    As of the 1st day of December, 2009, the scheduled monthly payment will be in the amount of U.S. $1,151.95. The scheduled monthly payment may change on that day of every twelfth month thereafter as described in Section 4 of this Loan Modification Agreement. The Lender will notify the Borrower prior to the date of change in the scheduled monthly payment. During the Interest-Only period, the amount of the monthly payment also may change if the Borrower makes voluntary prepayments of principal.

    **(A)  Monthly Payment Changes**
    Changes in the monthly payment will reflect changes in the unpaid principal and in the interest rate that the Borrower must pay. The Lender will determine the changed amount of the monthly payment in accordance with Section 5 of this Loan Modification Agreement.

4.  **Interest Rates**

    As of the 1st day of November, 2009, Borrower will pay interest at a yearly rate of 3.500%. Thereafter, the interest rate that Borrower will pay and the dates when the interest rate will change are set forth below.



8083 06/09

Interest Rate Increases.  The interest rate Borrower will pay will change as indicated below.

| Extended Interest Only Payment Period | | Principal and Interest Payment Period | |
| --- | --- | --- | --- |
| Change Date | Interest Rate | Change Date | Interest Rate |
| November 1, 2010 | 3.750% | November 1, 2019 | 6.125% |
| November 1, 2011 | 4.000% | November 1, 2020 | 7.125% |
| November 1, 2012 | 4.250% | November 1, 2021 | 7.150% |
| November 1, 2013 | 4.500% | November 1, 2022 | 7.150% |
| November 1, 2014 | 4.750% | November 1, 2023 | 7.150% |
| November 1, 2015 | 5.000% | November 1, 2024 | 7.150% |
| November 1, 2016 | 5.375% | November 1, 2025 | 7.150% |
| November 1, 2017 | 5.750% | November 1, 2026 | 7.150% |
| November 1, 2018 | 6.125% | November 1, 2027 | 7.150% |
| | | November 1, 2028 | 7.150% |

After the last Change Date, the interest rate shall remain the same until such time as the principal and interest due under the Note are paid in full.

5.   Monthly Payment Changes

   (A) Change Dates
   Each date on which the interest rate changes is called a "Change Date."

   (B) Interest-Only Payments
   The first ten years following the execution of this Loan Modification Agreement are known as the "Interest-Only Period." On the first Change Date and continuing through the 11th Change Date (to the extent Section 4 provides for 11 or more rate changes), the amount of the new scheduled monthly payments will be determined by dividing the new interest rate by 12 and multiplying the result by the then unpaid principal. If the Borrower makes a voluntary prepayment of principal during the Interest-Only Period, the next monthly payment will be less.  The lower monthly payment amount will be determined by dividing the new interest rate by 12 and multiplying it by the then unpaid principal. If the Borrower makes a voluntary prepayment of principal after the due date of a scheduled monthly payment, the prepayment amount will be credited immediately, but the reduction in the amount of the monthly payment may not be reflected on the billing statement until the following month.

   (C) Principal and Interest Payments
   On December 1, 2019 and on every Change Date thereafter, the Lender will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that the Borrower is expected to owe at the Change Date in full on the Maturity Date at the new interest rate in substantially equal payments.  The result of this calculation will be the amount of the new scheduled monthly payment.

6.   Impact of this Agreement on the New Interest-Only Payment and on the Amount of Interest Borrower Will Pay Over the Life of the Loan

   The Borrower understands that by agreeing to add the unpaid past-due payments, including unpaid and deferred interest, fees, and other costs (collectively "Unpaid Amounts") to the Unpaid Principal Balance, the added Unpaid Amounts accrue interest based on the interest rate in effect.  The Borrower also understands that this means interest will now accrue on the unpaid interest, and that this would not happen without this Agreement.

   The Borrower understands the result of this Agreement is to increase the amount of interest that will be owed over the term of the loan.  This is because the amount of principal is higher and the interest due is recalculated because it is charged on that higher principal amount.

7.   Impact of this Agreement on Monthly Payments at the End of the Interest-Only Period -- the First Principal and Interest Payment Due Date:

   After the Interest-Only Period ends, the Borrower understands the monthly payment will increase—even if the Borrower's interest rate stays the same—because the Borrower must start repaying the principal, as well as the interest, for the remainder of the loan term. Because this Agreement results in the Unpaid Amounts being added to principal, the amount of principal that is due with each monthly payment will also increase, which results in a bigger monthly payment. The Borrower also understands the need to plan for this increase in the amount of the monthly payment when the Interest-Only Period ends and that at that time the Borrower will no longer have the choice of paying only the Interest-Only monthly amount.  The Borrower understands that the increase in the monthly payment amount at the First Principal and Interest Payment Due Date could be significant and result in a condition referred to as payment shock.

8.   Understanding the Monthly Statement During the Interest-Only Period

   The Borrower understands that the Interest-Only Monthly Statement during the Interest-Only Period will offer the Borrower more payment options than just the Interest-Only Payment. Although the Borrower's Interest-Only loan offers the freedom to pay only the interest portion of the payment due each month for a specified period of time, the Borrower also understands he or she has the choice to pay additional amounts, which will assist the Borrower in paying down the



principal balance. If the Borrower chooses to pay extra money beyond the Interest-Only payment amount in a given month, the Borrower understands that will reduce the principal owed. The next month, the Interest-Only payment amount the Borrower owes (assuming there has been no change in the interest rate on the Borrower's loan) will be lower. This is because the amount of principal is lower and the interest due is recalculated because it is charged on that lower principal amount. The Borrower understands that paying more and reducing principal can also mean that the Borrower will build equity in the home more quickly. The Borrower understands that the Amortized Payment Choice and 15-Year Amortized Payment Choice shown on the Interest-Only monthly statement provide the Borrower with easy ways each month to select a payment that reduces the Borrower's principal. The Borrower may, however, pay any amount above the Interest-Only Payment amount.

9.    Effective of This Modification Agreement

Nothing in this agreement shall be understood or construed to be a refinance, satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and the Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

10.   Borrowers Agreement to Assist With Lost, Misplaced, Misstated, Inaccurate or Missing Documents

In consideration of this Modification, the Borrower agrees that if any document related to the Note and Security Instrument and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, the Borrower will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents the Lender requests of the Borrower shall be referred to as "Documents." The Borrower agrees to deliver the Documents within ten (10) days after receipt by the Borrower of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing.

_____  Dated: 10/20/09
GUADALUPE PARAMO

STATE OF California

COUNTY OF Los Angeles

On 10-20-09 before me, Lily Brown _____ Notary Public, personally appeared
Guadalupe Rico Paramo

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Lily Brown_
Signature

LILY BROWN
Comm. # 1825488
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Dec. 30, 2012

8083 06/09

BAC Home Loan Servicing, LP
7105 Corporate Drive
(PTX-B-36)
Plano, TX 75024

By: _____    Dated: _____

_____

STATE OF _California_

COUNTY OF _Los Angeles_

On _10-20-09_ before me, _Lily Brown_ _____ Notary Public, personally appeared

_Guadalupe Rico Paramo_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Lily Brown_

LILY BROWN
COMM. # 1825466
NOTARY PUBLIC - CALIFORNIA
Los Angeles County
My Comm. Exp. Dec. 30, 2012

8083 06/09

## CALIFORNIA NOTARY ACKNOWLEDGMENT
(For use by California Notary, if applicable.)

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_

On _10-20-09_ before me, _Lily Brown notary Public_
(insert name and title of the officer)

personally appeared _Guadalupe Paramo_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Lily Brown_

LILY BROWN
COMM. # 1825469
NOTARY PUBLIC-CALIFORNIA
Los Angeles County
MY COMM. EXP. DEC. 30, 2012

NOTARY SEAL

THIS CERTIFICATE MUST BE ATTACHED TO THE
DOCUMENT DESCRIBED AT RIGHT

Document: Loan Modification Agreement
Number of Pages:
Date of Document:
Signer(s) Other Than Named Above: _____

8181 09/09

**DO NOT WRITE BELOW THIS LINE**

THIS SECTION IS FOR INTERNAL USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing, LP

By: Stewart Lender Services, Inc., its attorney in fact

By: _____          _8|27|13_

Casey Human, A.V.P., Stewart Lender Services, Inc.          Date

RECORDING REQUESTED BY:

MAIL TAX STATEMENTS AND
WHEN RECORDED MAIL TO:

Carlos Franco Guzman
15029 Roseton Ave
Norwalk CA 90650

APN: ██████████                                    SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S):  DOCUMENTARY TRANSFER TAX IS $ NONE TRANSFER TO A TRUST

_____ Computed on full value of property conveyed, or
  X   Computed on full value less liens and encumbrances remaining at time
_____ City of Norwalk

For valuable consideration, receipt of which is hereby acknowledged,

Guadalupe Paramo a single woman as her sole and separate property

hereby GRANT(S) to Guadalupe Paramo a single woman as her sole and separate property and Carlos Franco Guzman a single
man as his sole and separate property

The following described property in City of Norwalk The County of Los Angeles, State of California:
See Exhibit "A"
Also known as:  15029 Roseton Ave Norwalk CA 90650
This is a bonafide gift and the grantor received nothing in return, R&T 11911"

Dated: February 17th 2019

_____
Guadalupe Paramo

*A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.*

STATE OF CALIFORNIA          )
                             ) SS.
COUNTY OF _Los Angeles_      )

On _February 19th, 2019_ before me, ___Josefina M. Monge___, Notary Public, personally
appeared ___Guadalupe Paramo___
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

Signature _____



MAIL TAX STATEMENTS AS DIRECTED ABOVE

EXHIBIT A

LEGAL DESCRIPTION

LOT(S) 188 OF TRACT NO. 6669, IN THE CITY OF NORWALK, COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 113, PAGE
(S) 45 AND 46 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.

IN THE ISSUANCE OF ANY FURTHER EVIDENCE OF TITLE THE LEGAL DESCRIPTION SHOWN IN THIS
GUARANTEE SHOULD BE USED IN PLACE OF THAT SHOWN ON THE ABOVE MENTIONED DEED OF TRUST AND
NOTICE OF DEFAULT

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

IN RE:

CARLOS FRANCO GUZMAN,

                    DEBTOR(S)

GUADALUPE PARAMO

                    CODEBTOR(S)

CASE NO. 2:19-bk-12122-WB

CHAPTER 7

## RIGHT TO FORECLOSE STATEMENT

Specialized Loan Servicing, LLC services the loan on the Property referenced in this Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant or Movant's successor or assignee. Movant, directly or through an agent, has possession of the Note. The Note is either made payable to Movant or has been duly endorsed. Movant is the original mortgagee or beneficiary or the assignee of the Mortgage/Deed of Trust.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**5677 Oberlin Drive, Suite 210, San Diego, CA  92121**

A true and correct copy of the foregoing document entitled as **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _04/24/2019_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Sam S Leslie (TR)    sleslie@trusteeleslie.com, sleslie@ecf.axosfs.com;trustee@trusteeleslie.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐    Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) _04/24/2019_, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*U.S. Bankruptcy Court Judge*
Honorable Julia W. Brand
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

*Debtor Pro Se*
Carlos Franco Guzman
15029 Roseton Ave
Norwalk, California 90650

Guadalupe Paramo
15029 Roseton Avenue
Norwalk, CA  90650

☐    Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 04/24/2019 | Darren J. Devlin, Esq. | /s//Darren J. Devlin |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

PrfSrv_CAC_X02                                                                                                                4128-N-3790

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 12                              **F 4001-1.RFS.RP.MOTION**